UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:01-CR-00002-FDW

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| v. | ) | |
| | ) | ORDER |
| (3) ANTONIO DEMOND BYERS, | ) | |
| Defendant. | ) | |

THIS MATTER comes before the Court on Defendant Antonio Demond Byer's Motions for Sentence Reduction under the First Step Act of 2018. (Doc. No. 222, 228, 237). For the reasons that follow, Defendant's Motions are DENIED.

I. **BACKGROUND**

During 1998 and 1999, Defendant participated in a drug-trafficking conspiracy which was responsible for distributing crack cocaine in Charlotte, North Carolina. WDNC Docket No. 3:01-CR-00002, Presentence Report ("PSR") dated January 22, 2002. Defendant was a member of the street gang known as "Tru" that operated in Charlotte, and the gang members were known to carry weapons and rob other drug dealers, in addition to distributing crack cocaine. Id., PSR ¶ 7.

In July of 1999, Defendant and three other gang members attempted to rob a local marijuana dealer after spying on their victim while he was using a pay phone at an Amoco station in Charlotte. Id., PSR ¶ 8 One of the Defendant's associates, Davieyon Hopkins, brandished and aimed a .41 magnum revolver at the victim. Defendant proceeded to shoot the victim in the leg when he attempted to run away, while a third associate, Allen Berry, went into the victim's car and stole a .45 caliber pistol. Id.

In September of 1999, Hopkins bought two ounces of crack cocaine from Bernard Bailey, the group's primary supplier of cocaine. Id. Later that day, Defendant, Hopkins, and Berry decided to rob Bailey. Id. Defendant and his co-conspirators, all of whom were armed, walked up to the apartment where Bailey was to sell them the crack cocaine. Id. As the group approached the apartment, Bailey walked out holding a bag of crack cocaine. Id. Berry pointed a .44 magnum revolver at Bailey and told him to give up the drugs. Id. When Bailey resisted, Berry fired the gun into the ground to scare Bailey. Id. When Defendant and his co-conspirators turned and started walking away, Bailey pulled out a gun of his own and started shooting at them. Id. Defendant and his companions turned and fired at Bailey. Id. Bullets from Berry's gun hit Bailey in the chest and abdomen, and Bailey later died from his injuries. Id.

A federal grand jury indicted Defendant and three others with conspiracy to possess with intent to distribute at least 50 grams of crack cocaine, 21 U.S.C. § 846; and possessing with intent to distribute at least 5 grams of crack cocaine, 21 U.S.C. § 846. (Doc. No. 3, pp. 1–2). Defendant was also charged with using a firearm during and in relation to a drug-trafficking offense and aiding and abetting the same, causing Bailey's death, 18 U.S.C. §§ 924(c)(1), (j)(1) and 2; possessing a firearm in furtherance of a drug-trafficking offense and aiding and abetting the same, 18 U.S.C. §§ 924(c)(1) and 2; and three counts of possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1). Id., (Doc. No. 3, pp. 2–5).

Defendant entered into a plea agreement with the United States under Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. No. 57). Defendant agreed to plead guilty to the drug-trafficking-conspiracy offense and to the section 924(j) firearm offense resulting in Bailey's death. Id. Although Defendant faced a mandatory term of life in prison for the drug-trafficking offense and a mandatory sentence of either life in prison or death for the section 924(j) firearm offense,

the parties agreed that Defendant would receive a sentence of 30 years in prison if the Court accepted the parties' agreement. Id. The parties also agreed that at least 150 grams but less than 500 grams of crack cocaine were reasonably foreseeable to Defendant. Id. at 2.

The United States Probation Office submitted a presentence report and calculated a base offense level of 43, applying the cross-reference to the murder guideline, U.S.S.G. § 2A1.1, because Defendant admitted that a murder was committed in furtherance of the drug-trafficking conspiracy. (Doc. No. 57 at 2); PSR ¶ 24. The Probation Office reduced the base offense level by three levels because Defendant accepted responsibility. PSR ¶ 30. Based on a total offense level of 40 and a criminal-history category of IV, the Sentencing Guidelines called for a sentence of between 360 months and life in prison. PSR ¶ 64. Defendant also faced a mandatory-minimum term of 10 years to life in prison for his drug- trafficking offense and a consecutive term of life in prison or death for the firearm offense. PSR ¶ 63.

The Court accepted the parties' Rule 11(c)(1)(C) agreement and sentenced Defendant to 240 months in prison for the drug-trafficking offense and to a consecutive term of 120 months in prison for the firearm offense, for an aggregate term of 360 months in prison. (Doc. No. 82, p. 2). Defendant now asks this Court to reduce his sentence under the First Step Act.

**II. DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER THE FIRST STEP ACT**

In his Motion, Defendant states he is eligible for a reduced sentence because his conspiracy to possess cocaine base with the intent to distribute 50 grams or more of cocaine base conviction is a covered offense. (Doc. No. 237). Defendant also argues that a sentence reduction to time served would accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a) and properly balance the seriousness of the offense with his good conduct over 20 years in prison. Id.

Defendant's Motion for Resentencing seeks relief under Section 404 of the First Step Act. Section 404 gave retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. See First Step Act, Pub. L. No. 115- 391, § 402(a), 132 Stat. 5194, 5221 (2018). Section 404(b) of the Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010, (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." 132 Stat. at 5222.

The Fourth Circuit explained in United States v. Wirsing that this definition of "covered offense" means that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) . . . are eligible" for a sentence reduction under section 404 of the First Step Act, unless they have already moved for relief under section 404 or they received the benefit of the Fair Sentencing Act when they were sentenced. 943 F.3d 175, 186 (4th Cir. 2019); see also Section 404(c) of the First Step Act, 132 Stat. at 5222. The Fourth Circuit held in United States v. Woodson that a defendant convicted under the default punishment provision of 21 U.S.C. § 841(b)(1)(C) for possessing with intent to distribute crack cocaine has also been convicted of a "covered offense," because by increasing the drug-quantity thresholds of section 841(b)(1)(A)(iii) and (B)(iii), the Fair Sentencing Act also altered the default drug quantity that would place a defendant's offense in section 841(b)(1)(C) by increasing the drug-quantity threshold for that section. 962 F.3d 812, 816 (4th Cir. 2020).

Taken together, Wirsing and Woodson mean that any defendant convicted of a crack cocaine offense punishable by 21 U.S.C. § 841(b)(1) before the effective date of the Fair Sentencing Act is eligible for a sentence reduction under the First Step Act, unless he has already sought and been denied such a reduction, or he received the benefit of the Fair Sentencing Act

4

when he was originally sentenced. Defendant is eligible for a *discretionary* reduction of his sentence under the First Step Act, because he was convicted of a "covered offense" for which the First Step Act authorizes a reduced sentence. He pleaded guilty to conspiring to possess with intent to distribute crack cocaine, and Wirsing and Woodson make clear that his offense is a "covered offense" under section 404(a) of the First Step Act.

The Court recognizes Defendant's personal progress while incarcerated the past twenty years. Defendant has used the educational and job opportunities presented to him by the BOP to improve and develop himself in a positive way. However, contrary to Defendant's suggestion, his disciplinary record in prison does *not* weigh in favor of a discretionary reduction in sentence. BOP records show Defendant is still unable to stop possessing drugs even after multiple past narcotic convictions. (Doc. No. 237-3). Defendant's multiple disciplinary citations for fighting, drugs/alcohol violations, and a recent citation for possessing a hazardous tool demonstrate Defendant is still not ready to abide by the law.

The Court denies Defendant's Motion for a sentence reduction because it is not warranted under the applicable § 3553(a) factors. See United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Before reducing a Defendant's sentence, the Court must consider whether release is warranted given the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A). These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Defendant has a long criminal history which includes two violent robberies in furtherance of a drug-trafficking conspiracy. <u>See</u> PSR. Both robberies involved the discharge of a firearm with one victim being shot in the leg and another victim losing his life. While Defendant was young at the time of the offense, he had already been convicted of two other drug offenses and was a member of a violent street gang that distributed crack cocaine and robbed other drug dealers. <u>Id.</u> The extraordinarily violent nature and seriousness of the Defendant's criminal history and the sentence imposed against him must be considered when the Court asks itself if releasing him will serve the interests of general or individual deterrence. The Court recognizes the seriousness of Defendant's offense, the necessity to provide just punishment, and Defendant's persistence in breaking the law. The Court must protect the public from the possible danger of Defendant's continued narcotics behaviors, when deciding whether to reduce the sentencing, thereby promoting specific deterrence. Thus, Defendant's release is not warranted under the relevant § 3553(a) factors due to his potential danger to the public.

### III.  CONCLUSION

For the foregoing reasons, Defendant Antonio Demond Byer's Motions for Sentence Reduction under the First Step Act (Doc. No. 222, 228, 237) are **DENIED**.

IT IS SO ORDERED.

Signed: July 13, 2021

Frank D. Whitney
United States District Judge